UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

_____

THE UNITED STATES OF AMERICA,   )
                    )
       and           )
                    )
THE STATE OF NEBRASKA,      )
                    )
          Plaintiffs,   )    Civil Action No.  8:20-cv-269
                    )
       v.            )
                    )
HENNINGSEN FOODS, INC.,    )
                    )
         Defendant.   )
_____)

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Attorney General of Nebraska, acting at the request of the Nebraska Department of Environment and Energy ("NDEE"), file this Complaint and allege as follows:

## NATURE OF THE ACTION

1.     This is a civil action against Defendant Henningsen Foods, Inc. ("HFI") under Sections 309(b) and (d) of the Federal Water Pollution Control Act (commonly referred to as the "Clean Water Act" and hereinafter referred to as the "CWA"), 33 U.S.C. § 1319(b), (d). Plaintiffs seek civil penalties and injunctive relief against Defendant for violating Section 307 of the CWA, 33 U.S.C. § 1317, and the Nebraska Environmental Protection Act, Neb. Rev. Stat. § 81-1501 to 81-1532, by causing or contributing to David City's violations of its National Pollution Discharge Elimination System ("NPDES") permit, violating the National Pretreatment

1

Standards at 40 C.F.R. Part 403, and violating the requirements of Defendant's Nebraska

Pretreatment Program ("NPP") permit.

2.       Defendant owns and operates an egg-processing plant located at 325 Third Street,

David City, Nebraska (the "Facility").  The violations alleged in the complaint occur when

Defendant's Facility discharges wastewater into the David City publicly owned treatment works

("POTW").

## JURISDICTION AND VENUE

3.       This Court has subject-matter jurisdiction over this action under 33 U.S.C.

§ 1319(b) and 28 U.S.C. §§ 1331, 1345, and 1355.

4.       Venue is proper in the District of Nebraska under 33 U.S.C. § 1319(b) and 28

U.S.C. §§ 1391(b) and 1395(a) because it is the judicial district in which the alleged violations

occurred and where HFI conducts business.

5.       Authority to bring this action is vested in the United States Department of Justice

under 33 U.S.C. §§ 1319(b) and 1366 and 28 U.S.C. §§ 516 and 519.

6.       The United States provided notice of the commencement of this action to the

State of Nebraska under 33 U.S.C. § 1319(b).

7.       The State of Nebraska has the authority to bring this action at the request of

NDEE under the Nebraska Environmental Protection Act, Neb. Rev. Stat § 81-1501 to 81-1532.

## PARTIES

8.       Plaintiff the United States of America is acting at the request of the EPA

Administrator.  Plaintiff the State of Nebraska is acting at the request of NDEE.  The Nebraska

Environmental Protection Act gives NDEE the power and duty to act as the state water pollution

control agency for all purposes of the CWA.  Neb. Rev. Stat. § 81-1504(4).  Before July 1, 2019,

NDEE was named the Nebraska Department of Environmental Quality ("NDEQ").  Under 2019

Neb. Laws LB 302, NDEQ was renamed NDEE effective July 1, 2019.

9.       Defendant HFI is a New York corporation formed in 1962 with a principal office

address at 14334 Industrial Road, Omaha, Nebraska, 68144.

10.       HFI is a "person" as defined by 33 U.S.C. § 1362(5) and Neb. Rev. Stat. § 81-

1502(10).

## STATUTORY AND REGULATORY BACKGROUND

11.       The objective of the CWA is to "restore and maintain the chemical, physical, and

biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).

12.       The CWA prohibits the owner or operator of any source that introduces pollutants

into a POTW from operating that source in violation of any effluent standard or prohibition or

pretreatment standard promulgated under Section 307 of the Act.  33 U.S.C § 1317(b) & (d).

13.        "Pollutants" include "chemical wastes, biological materials, . . . and industrial . . .

waste discharged into water."  33 U.S.C. § 1362(6).

14.       "Water pollution" is "the manmade or man-induced alteration of the chemical,

physical, biological, or radiological integrity of water."  Neb. Rev. Stat. § 81-1502(20).

15.       Section 307 of the CWA establishes a statutory scheme for sources of pollutants

that do not directly discharge to navigable waters, but, rather, introduce pollutants into POTWs,

which in turn may discharge pollutants to navigable waters.  33 U.S.C. § 1317.

16.       Section 502(7) of the CWA defines "navigable waters" as "the waters of the

United States."  33 U.S.C. § 1362(7).  In turn, "waters of the United States" has been defined to

include, inter alia, all waters which are currently used, were used in the past, or may be

susceptible to use in interstate or foreign commerce; and tributaries to such waters.  40 C.F.R. §

122.2 (1993) and 85 Fed. Reg. 22250, 22338 (The Navigable Waters Protection Rule: Definition of "Waters of the United States," April 21, 2020).

17.     The Nebraska Environmental Protection Action defines "waters of the state" as "all waters within the jurisdiction of this state, including all streams, lakes, ponds, impounding reservoirs, marshes, wetlands, watercourses, waterways, wells, springs, irrigation systems, drainage systems, and all other bodies or accumulations of water, surface or underground, natural or artificial, public or private, situated wholly or partly within or bordering upon the state."  Neb. Rev. Stat. § 81-1502(21).

18.     Section 307(b) of the CWA directs EPA, among other things, to promulgate pretreatment standards "to prevent the discharge of any pollutant through treatment works . . . which are publicly owned, which pollutant interferes with, passes through, or otherwise is incompatible with such works."  33 U.S.C. § 1317(b).

19.     Under Section 307(b) of the CWA, 33 U.S.C. § 1317(b), EPA promulgated National Pretreatment Standards, codified at 40 C.F.R. Part 403.  Neb. Admin. Code Tit. 119, Ch. 26 § 010 adopts and incorporates by reference the requirements of 40 C.F.R Part 403.

20.     "National Pretreatment Standard," "Pretreatment Standard," and "Standard" mean "any regulation containing pollutant discharge limits promulgated by the EPA in accordance with section 307(b) and (c) of the Act, which applies to Industrial Users."  40 C.F.R. § 403.3(l); Neb. Admin. Code Tit. 119, Ch. 1 § 072.

21.      "Pretreatment" means "the reduction of the amount of pollutants, the elimination of pollutants, or the alteration of the nature of pollutant properties in wastewater prior to or in lieu of discharging or otherwise introducing such pollutants into a POTW.  The reduction or

alteration may be obtained by physical, chemical or biological processes, process changes or by other means . . . ." 40 C.F.R. § 403.3(s); Neb. Admin. Code Tit. 119, Ch. 1 § 089.

22.     The National Pretreatment Standards establish general and specific prohibitions that "apply to each User introducing pollutants into a POTW whether or not the User is subject to other National Pretreatment Standards or any national, State, or local Pretreatment Requirements."  40 C.F.R. § 403.5(a)-(b).

23.     Neb. Admin. Code Tit. 119, Ch. 26 § 003 likewise establishes general and specific State prohibitions that "apply to each user introducing pollutants into a POTW whether or not the user is subject to other national pretreatment standards."

24.     "User" and "Industrial User" mean "a source of Indirect Discharge."  40 C.F.R. § 403.3(j); Neb. Admin. Code Tit. 119, Ch. 1 § 054.

25.     "Indirect Discharge" and "Discharge" mean "the introduction of pollutants into a POTW from any non-domestic source regulated under section 307(b), (c) or (d) of the Act."  40 C.F.R. § 403.3(i).

26.     "Indirect discharger" means "a non-domestic discharger introducing pollutants to a publicly owned treatment works."  Neb. Admin. Code Tit. 119, Ch. 1 § 053.

27.      "POTW" means "a treatment works as defined by section 212 of the [CWA], which is owned by a State or a municipality . . . ."  40 C.F.R. § 403.3(q); Neb. Admin. Code Tit. 119, Ch. 1 § 093.

28.     Section 212(2)(A) of the CWA, 33 U.S.C. § 1292(2)(A), defines "treatment works," to include "any devices and systems used in the storage, treatment, recycling, and reclamation of municipal sewage or industrial wastes of a liquid nature."

29.     Neb. Admin. Code Tit. 119, Ch. 1 § 094 defines "a "Publicly Owned Treatment Works (POTW) Treatment Plant" as "that portion of the POTW which is designed to provide treatment (including recycling and reclamation) of municipal sewage and industrial waste."

30.     Under the general prohibitions in the National Pretreatment Standards and Neb. Admin. Code Tit. 119, Ch. 26 § 003, "a User may not introduce into a POTW any pollutant(s) which cause Pass Through or Interference."  40 C.F.R. § 403.5(a)(1); Neb. Admin. Code Tit. 119, Ch. 26 § 003.01.

31.     "Pass Through" means "a Discharge which exits the POTW into waters of the United States in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation)."  40 C.F.R. § 403.3(p); *see also* Neb. Admin. Code Tit. 119, Ch. 1 § 082 (defining "Pass Through" in the same way with respect to "waters of the state").

32.      "Interference" means "a Discharge which, alone or in conjunction with a discharge or discharges from other sources, both: (1) Inhibits or disrupts the POTW, its treatment processes or operations, or its sludge processes, use or disposal; and (2) Therefore is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation) . . . ."  40 C.F.R. § 403.3(k); Neb. Admin. Code Tit. 119, Ch. 1 § 056.

33.     Under the specific prohibitions in the National Pretreatment Standards and Neb. Admin. Code Tit. 119, Ch. 26 § 003, a User shall not introduce into a POTW "[p]ollutants which will cause corrosive structural damage to a POTW, but in no case Discharges with a pH lower

than 5.0, unless the works is specifically designed to accommodate such Discharges." 40 C.F.R. § 403.5(b)(2); Neb. Admin. Code Tit. 119, Ch. 26 § 003.02B.

34.     Under the specific prohibitions in the National Pretreatment Standards and Neb. Admin. Code Tit. 119, Ch. 26 § 003, a User also shall not introduce into a POTW "[a]ny pollutant, including oxygen demanding pollutants (BOD, etc.) released in a Discharge at a flow rate and/or pollutant concentration which will cause Interference with the POTW." 40 C.F.R. § 403.5(b)(4); Neb. Admin. Code Tit. 119, Ch. 26 § 003.02D.

35.     The National Pretreatment Standards, 40 C.F.R. § 403.12(f), and Neb. Admin. Code Tit. 119, Ch. 26 § 004.06B, require Industrial Users to notify the POTW and NDEE immediately of all "discharges that could cause problems to the POTW, including any slug loadings," as defined by § 403.5(b).

36.     In addition to the general and specific prohibitions in the National Pretreatment Standards at 40 C.F.R. § 403.5(a)-(b) and in Neb. Admin. Code Tit. 119, Ch. 26 § 003, Industrial Users are subject to "local limits" established by a POTW, or by a state with an approved Pretreatment Program, to ensure the POTW's compliance with the terms of its NPDES permit. *See* 40 C.F.R. §§ 403.5(c), 403.8(a), 403.10(e).

37.     Upon receiving authorization and approval under Section 402(b) of the CWA, 33 U.S.C. § 1342(b), a state may establish its own Pretreatment Program and thereby assume responsibility for implementing the POTW Pretreatment Program requirements set forth in 40 C.F.R. § 403.8(f). *See* 40 C.F.R. § 403.10(e).

38.     In September 1984, EPA approved the State of Nebraska's Pretreatment Program. Modification to the National Pollutant Discharge Elimination System Memorandum of Agreement Between the State of Nebraska and EPA, Region VII (Sept. 7, 1984).

7

39.     Section 307(d) of the CWA makes it unlawful to operate a source in violation of any pretreatment standards promulgated under Section 307: "After the effective date of any effluent standard or prohibition or pretreatment standard promulgated under this section, it shall be unlawful for any owner or operator of any source to operate any source in violation of any such effluent standard or prohibition or pretreatment standard."  33 U.S.C. § 1317(d).

40.     Local limits established by a POTW, or by a state with an approved Pretreatment Program, are considered to be "Pretreatment Standards" for the purposes of Section 307(d) of the CWA, 33 U.S.C. § 1317(d).  40 C.F.R. § 403.5(d).

41.     The Nebraska Environmental Protection Act makes it unlawful for any person to violate any water quality or effluent standards or limitations; any permit or license condition or limitation; or any monitoring, reporting, or record-keeping requirements contained in, issued, or entered into under the Act or the rules or regulations adopted and promulgated under the Act. Neb. Rev. Stat. § 81-1508.02(1)(b).

42.     The Nebraska Environmental Protection Act prohibits "any false statement, representation or certification . . . in any document required to be filed" by the Act or the rules or regulations adopted and promulgated under the Act.  Neb. Rev. Stat. § 81-1508.02(1)(c).

43.     The Nebraska Environmental Protection Act also makes it unlawful to "[i]ncrease in volume or strength any waste in excess of permitted discharges specified under any existing permit."  Neb. Rev. Stat. § 81-1506(2)(c).

44.     In states authorized to implement their own Pretreatment Programs, EPA retains authority, concurrent with the state, to enforce the state Pretreatment Program permits.  33 U.S.C. §§ 1319, 1342(i).

45.     EPA may commence a civil action for appropriate relief whenever it finds that a source has discharged pollutants to a POTW in violation of applicable pretreatment standards. 33 U.S.C. § 1319(b).

46.     Under Sections 309(b) and (d) of the CWA, any owner or operator of a source who operates that source in violation of any effluent standard or prohibition or pretreatment standard promulgated under Section 307 of the CWA, 33 U.S.C. § 1317, is liable for injunctive relief and civil penalties, not to exceed $25,000 per day for each violation.  33 U.S.C. § 1319(b), (d).  Under 40 C.F.R. Part 19, Adjustment of Civil Monetary Penalties for Inflation, as amended, the civil penalty amount was raised to a maximum of $37,500 per day for each violation occurring between December 6, 2013 and November 2, 2015, and to a maximum of $55,800 per day for each violation occurring after November 2, 2015, where penalties are assessed on or after January 13, 2020.

47.     Violations of the Nebraska Environmental Protection Act are subject to civil penalties of $10,000 per violation, with each day of a continuing violation constituting a separate violation.  Neb. Rev. Stat. § 81-1508.02(2).

## GENERAL ALLEGATIONS

48.     At all times relevant to this action, the David City POTW received and treated wastewater from domestic and industrial sources, including Defendant's Facility.

49.     At all times relevant to this action, the David City POTW included a wastewater treatment plant, which consisted of a sewage collection system, a two-cell sequencing batch reactor, and a five-cell controlled discharge lagoon system, within the meaning of 40 C.F.R. § 403.3(r) and Neb. Admin. Code Tit. 119, Ch. 1 § 094.

50.     At all times relevant to this action, the David City POTW was a "POTW" within the meaning of 40 C.F.R. § 403.3(q) and Neb. Admin. Code Tit. 119, Ch. 1 § 093, and a "treatment works" within the meaning of Section 212 of the CWA, 33 U.S.C. § 1292(2)(A).

51.     At all times relevant to this action, the David City POTW was not specifically designed to accommodate discharges with a pH less than 5.0 standard units.

52.     At all times relevant to this action, the David City POTW discharged wastewater into Keysor Creek through an outfall at the POTW.

53.     Keysor Creek is a tributary, within the meaning of the Act, to the North Fork Big Blue River.

54.     Keysor Creek has continuous flow at least nine months of the year, including months in each season of the calendar year, that are not in direct response to precipitation, and is therefore intermittent or perennial within the meaning of the Act.

55.     Keysor Creek has a bed, bank, and ordinary high water mark.

56.     The North Fork Big Blue River is a perennial stream with a bed, bank, and ordinary high water mark that contributes continuous flow to the Big Blue River, and is a tributary within the meaning of the Act.

57.     The Big Blue River is used commercially and recreationally for boating, among other uses, and is used in, or susceptible for use in, interstate commerce.

58.     Keysor Creek, the North Fork of the Blue River, and the Big Blue River are each waters of the United States within the meaning of the Act..

59.     At all times relevant to this action, the wastewater that the David City POTW discharged to Keysor Creek contained "pollutants," as defined by Section 502(6) of the CWA, 33

U.S.C. § 1362(6), including biochemical oxygen demand ("BOD"), total suspended solids ("TSS"), and/or ammonia, among other pollutants.

60.     At all times relevant to this action, the David City POTW "discharged pollutants" through a "point source" to "navigable waters" as those terms are defined by Sections 502(12), (14), and (7) of the CWA, 33 U.S.C. § 1362(12), (14), and (7), and discharged pollutants through a "point source" to "waters of the state" as defined in Neb. Rev. Stat. § 81-1502(21)-(22).

61.     On or about July 1, 2010, NDEE issued NPDES permit number NE0021199 to the David City POTW, which authorizes the discharge of pollutants from an outfall at the David City POTW to Keysor Creek, subject to the conditions and effluent limitations set forth in the permit.  NDEE administratively extended this permit in September 2015.

62.     On or about April 1, 2016, NDEE issued a new NPDES permit to the David City POTW with the same permit number.  On or about October 24, 2017, NDEE modified David City's NPDES permit, which remains in effect.

63.     At all times relevant to this action, the David City NPDES permit contained discharge limits and monitoring requirements, including effluent limitations on BOD, TSS, and ammonia, among other pollutants.

64.     At all times relevant to this action, the David City NPDES permit required the City to submit Discharge Monitoring Reports ("DMRs") to NDEE setting forth monitoring results obtained from discharge sampling at the POTW during each quarterly reporting period.

65.     At all times relevant to this action, Defendant's Facility introduced wastewater from two outfalls at its Facility into the David City POTW.

66.     At all times relevant to this action, the Facility's wastewater contained "pollutants," as defined by Section 502(6) of the CWA, 33 U.S.C. § 1362(6), including, but not limited to, BOD, TSS, Total Kjeldahl Nitrogen ("TKN"), variable pH, and oil and grease.

67.     At all times relevant to this action, Defendant "discharged" pollutants into the David City POTW within the meaning of 40 C.F.R. § 403.3(i).

68.     At all times relevant to this action, Defendant was an "indirect discharger" within the meaning of Neb. Admin. Code Tit. 119, Ch.1 § 053.

69.     At all times relevant to this action, Defendant was an "Industrial User" of the David City POTW within the meaning of 40 C.F.R. § 403.3(j) and Neb. Admin. Code Tit. 119, Ch. 1 § 054.

70.     At all times relevant to this action, Defendant was subject to the CWA, the Nebraska Environmental Protection Act, the general and specific prohibitions in the National Pretreatment Standards, and the general and specific State prohibitions in Neb. Admin. Code Tit. 119, Ch. 26 § 003.  *See* 40 C.F.R. § 403.1.

71.     On or about October 1, 2013, NDEE issued Defendant NPP permit number NE0133108, which authorizes the discharge of pollutants from Defendant's Facility to the David City POTW, subject to the conditions and effluent standards set forth in the permit.

72.      On or about January 1, 2018, NDEE modified Defendant's NPP permit.

73.     On or about January 1, 2020, NDEE modified Defendant's NPP permit, which remains in effect.

74.     At all times relevant to this action, Defendant's NPP permit contained discharge limits and monitoring requirements for the Facility, including effluent limits for BOD, TSS, and pH.

75.     At all times relevant to this action, Defendant's NPP permit prohibited the introduction of pollutants into the POTW that will pass through the treatment works or otherwise be incompatible with such works.

76.     At all times relevant to this action, Defendant's NPP permit prohibited the introduction of pollutants into the POTW, which will interfere with the operation of the POTW, including interference with its use or disposal of municipal sludge.

77.     At all times relevant to this action, Defendant's NPP permit required Defendant to submit DMRs to NDEE setting forth monitoring results from discharge sampling at the Facility's two outfalls during each quarterly reporting period.

78.     On October 31 through November 3, 2016, EPA performed a Compliance Sampling Inspection at the David City POTW and Defendant's Facility (the "2016 EPA Inspection").  As part of the 2016 EPA Inspection, EPA reviewed documents, including copies of David City's and Defendant's DMRs and other monitoring data collected for the time period from January 2014 to December 2016; observed the David City POTW, Defendant's Facility, and sampling stations; and collected effluent samples.

79.     On or about April 7, 2017, EPA issued requests for information from David City and Defendant under Section 308 of the CWA, 33 U.S.C. § 1318, requiring the submittal of information regarding, among other things, DMRs, monitoring data, communications between David City and Defendant, and plans to address compliance with David City's NPDES permit and Defendant's NPP permit.

80.     On or about April 27, 2017, David City submitted its response to the information request letter.

13

81.     On or about May 5, 2017, Defendant submitted its response to the information request letter.

82.     On or about April 5, 2018, EPA issued a second request for information from David City under Section 308 of the CWA, 33 U.S.C. § 1318, requesting additional monitoring data for the wastewater discharged from Defendant's Facility to the David City POTW, collected by either David City or Defendant.

83.     On or about April 6, 2018, David City submitted its response to the second information request letter.

84.     EPA and NDEE have reviewed information from the 2016 EPA Inspection, David City's responses to the two information request letters that it received, Defendant's response to the information request letter that it received, information that David City and Defendant submitted to NDEE pursuant to their respective permits, correspondence between NDEE and David City regarding the City's compliance with its NPDES permit, and correspondence between NDEE and Defendant regarding Defendant's compliance with its NPP permit (collectively the "Compliance Records").

85.     EPA's and NDEE's review of the Compliance Records revealed that the David City POTW violated its NPDES permit limits on numerous occasions between January 2014 and the present, and that corresponding discharges from Defendant's Facility to the POTW caused or contributed to many of the City's violations.

86.     Upon information and belief, subject to a reasonable opportunity for further investigation and discovery, on numerous occasions between January 2014 and the present, Defendant discharged BOD into the David City POTW, which exited the POTW into waters of

the United States in quantities or concentrations, which, caused or contributed to David City's violation of the effluent limitation for BOD in the City's NPDES permit.

87.     On numerous occasions between January 2014 and the present, Defendant discharged BOD, TSS, TKN, variable pH, and/or oil and grease into the David City POTW, which inhibited and/or disrupted the POTW, its treatment processes or operations, or its sludge processes, use or disposal, and therefore, caused or contributed to David City's recurring violations of the effluent limitations for ammonia and TSS in the City's NPDES permit.

88.     EPA's and NDEE's review of the Compliance Records revealed that Defendant's Facility discharged wastewater into the David City POTW with oxygen demanding pollutants at a flow rate and/or pollutant concentration that caused Interference with the David City POTW on numerous occasions between January 2014 and the present.

89.     Each such incident alleged in paragraphs 86 through 88 constitutes Pass Through or Interference caused or contributed to by the Facility's discharge of pollutants to the POTW. *See* 40 C.F.R. § 403.3(k), (p); Neb. Admin. Code Tit. 119, Ch. 1 §§ 056, 082.

90.     From October 1, 2013 to December 31, 2017, Defendant's NPP permit established a combined daily maximum discharge limit for BOD of 2,781 kg/day and a combined daily maximum discharge limit for TSS of 609 kg/day from the two outfalls at the Facility.

91.     On or about January 1, 2018, NDEE modified Defendant's NPP permit by changing the units of the combined daily maximum discharge limits for BOD and TSS from kg/day to lbs/day.

92.     From January 1, 2018 until December 31, 2019, Defendant's NPP permit established a combined daily maximum discharge limit for BOD of 2,781 lbs/day and a

15

combined daily maximum discharge limit for TSS of 609 lbs/day from the two outfalls at the Facility.

93.     From January 1, 2020 to the present, Defendant's NPP permit established a maximum monthly average discharge limit for BOD of 2,804 lbs/day and a maximum monthly discharge limit for TSS of 700 lbs/day from the combined single outfall at the Facility.

94.     EPA's and NDEE's review of the Compliance Records revealed that the discharge of wastewater from Defendant's Facility to the David City POTW exceeded the daily maximum discharge limit for BOD in Defendant's NPP permit on numerous occasions between January 2014 and the present.

95.     EPA's and NDEE's review of the Compliance Records revealed that the discharge of wastewater from Defendant's Facility to the David City POTW exceeded the daily maximum discharge limit for TSS in Defendant's NPP permit on numerous occasions between January 2014 and the present.

96.     At all times relevant to this action, Defendant's NPP permit established a lower discharge limit for pH of 5.0 standard units for the Facility's discharge at each outfall.

97.     EPA's and NDEE's review of the Compliance Records revealed that Defendant's Facility introduced wastewater with a pH of less than 5.0 standard units into the David City POTW on several occasions between January 2014 and the present.

98.     At all times relevant to this action, 40 C.F.R. § 122.22; Neb. Admin. Code Tit. 119, Ch. 13 § 005; and Defendant's NPP permit required Defendant to certify that all information submitted to NDEE through its DMRs was "true, accurate, and complete."

99.     EPA's and NDEE's review of the Compliance Records revealed that Defendant submitted inaccurate and/or incomplete information to NDEE in its certified DMRs on numerous occasions between January 2014 and the present.

100.    At all times relevant to this action, Defendant's NPP permit required Defendant to submit DMRs to NDEE on a quarterly basis.

101.    EPA's and NDEE's review of the Compliance Records revealed that Defendant repeatedly failed to timely submit DMRs to NDEE between January 2014 and the present, only submitting them after Defendant received a Notice of Violation from NDEE.

102.    At all times relevant to this action, Defendant's NPP permit required Defendant to notify the David City POTW of slug loadings immediately.

103.    EPA's and NDEE's review of the Compliance Records revealed that Defendant failed to notify the David City POTW of slug loadings immediately on at least one occasion between January 2014 and the present.

### FIRST CLAIM FOR RELIEF
### (Pass Through and Interference Violations)

104.    The allegations of the foregoing paragraphs are incorporated herein by reference.

105.    Upon information and belief, subject to a reasonable opportunity for further investigation and discovery, on numerous occasions between January 2014 and the present, Defendant violated 40 C.F.R. § 403.5(a)(1); Neb. Admin. Code Tit. 119, Ch. 26 § 003.01; its NPP permit; Section 307(d) of the CWA, 33 U.S.C. § 1317(d); and Neb. Rev. Stat. § 81-1508.02(1), by discharging pollutants to the David City POTW in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, caused Pass Through at the David City POTW.

17

106.    On numerous occasions between January 2014 and the present, Defendant violated 40 C.F.R. § 403.5(a)(1); Neb. Admin. Code Tit. 119, Ch. 26 § 003.01; its NPP permit; Section 307(d) of the CWA, 33 U.S.C. § 1317(d); and Neb. Rev. Stat. § 81-1508.02(1), by discharging pollutants to the David City POTW in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, caused Interference at the David City POTW.

107.    On numerous occasions between January 2014 and the present, Defendant violated 40 C.F.R. § 403.5(b)(4); Neb. Admin. Code Tit. 119, Ch. 26 § 003.02D; Section 307(d) of the CWA, 33 U.S.C. § 1317(d); and Neb. Rev. Stat. § 81-1508.02(1), by discharging wastewater with oxygen demanding pollutants at a flow rate and/or pollutant concentration that caused Interference with the David City POTW.

108.    Under 33 U.S.C. § 1319(b) and (d), Defendant is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation occurring between December 6, 2013 and November 2, 2015, and up to $55,800 per day for each violation occurring thereafter.

109.    Under the Nebraska Environmental Protection Act, Defendant is liable for civil penalties of $10,000 per day for each day of violation.  Neb. Rev. Stat. § 81-1508.02(2).

110.    Unless enjoined, Defendant's violations will continue or recur.

**SECOND CLAIM FOR RELIEF**
**(Pretreatment Effluent Limit Violations)**

111.    The allegations of the foregoing paragraphs are incorporated herein by reference.

112.    On numerous occasions between January 2014 and the present, Defendant violated its NPP permit; Section 307(d) of the CWA, 33 U.S.C. § 1317(d); Neb. Rev. Stat. § 81-1508.02(1); and Neb. Rev. Stat. § 81-1506(2)(c), by discharging wastewater to the David City

POTW with BOD in excess of the applicable maximum limit for BOD in Defendant's NPP permit.

113.    On numerous occasions between January 2014 and the present, Defendant violated its NPP permit; Section 307(d) of the CWA, 33 U.S.C. § 1317(d); Neb. Rev. Stat. § 81-1508.02(1); and Neb. Rev. Stat. § 81-1506(2)(c), by discharging wastewater to the David City POTW with TSS in excess of the applicable maximum limit for TSS in Defendant's NPP permit.

114.    On several occasions between January 2014 and the present, Defendant violated 40 C.F.R. § 403.5(b)(2); Neb. Admin. Code Tit. 119, Ch. 26 § 003.02B; its NPP permit; Section 307(d) of the CWA, 33 U.S.C. § 1317(d); Neb. Rev. Stat. § 81-1508.02(1); and Neb. Rev. Stat. § 81-1506(2)(c), by discharging wastewater to the David City POTW with a pH of less than 5.0 standard units.

115.    Under 33 U.S.C. § 1319(b) and (d), Defendant is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation occurring between December 6, 2013 and November 2, 2015, and up to $55,800 per day for each violation occurring thereafter.

116.    Under the Nebraska Environmental Protection Act, Defendant is liable for civil penalties of $10,000 per day for each day of violation.  Neb. Rev. Stat. § 81-1508.02(2).

117.    Unless enjoined, Defendant's violations will continue or recur.

### THIRD CLAIM FOR RELIEF
### (Pretreatment Monitoring and Reporting Violations)

118.    The allegations in the foregoing paragraphs are incorporated herein by reference.

119.    On numerous occasions between January 2014 and the present, Defendant violated 40 C.F.R. § 122.22; its NPP permit; Section 307(d) of the CWA, 33 U.S.C. § 1317(d); and Neb. Rev. Stat. § 81-1508.02(1), by submitting inaccurate and/or incomplete information to NDEE in its certified DMRs.

120.    Between January 2014 and the present, Defendant repeatedly violated its NPP

permit; Section 307(d) of the CWA, 33 U.S.C. § 1317(d); and Neb. Rev. Stat. § 81-1508.02(1),

by failing to timely submit DMRs to NDEE.

121.    On at least one occasion between January 2014 and the present, Defendant

violated 40 C.F.R. § 403.12(f); Neb. Admin. Code Tit. 119, Ch. 26 § 004.06B; its NPP permit;

Section 307(d) of the CWA, 33 U.S.C. § 1317(d); and Neb. Rev. Stat. § 81-1508.02(1), by

failing to notify the David City POTW of slug loadings immediately.

122.    Under 33 U.S.C. § 1319(b) and (d), Defendant is liable for injunctive relief and

civil penalties of up to $37,500 per day for each violation occurring between December 6, 2013

and November 2, 2015, and up to $55,800 per day for each violation occurring thereafter.

123.    Under the Nebraska Environmental Protection Act, Defendant is liable for civil

penalties of $10,000 per day for each day of violation.  Neb. Rev. Stat. § 81-1508.02(2).

124.    Unless enjoined, Defendant's violations will continue or recur.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the State of Nebraska,

respectfully request that the Court grant the following relief:

1.      Under 33 U.S.C. § 1319(b), Neb. Rev. Stat. § 81-1508(2), and Neb. Rev. Stat.

§81-1506(2)(c), enjoin Defendant from operating its Facility in violation of the CWA, including,

but not limited to, Section 307 of the CWA, the National Pretreatment Standards at 40 C.F.R.

Part 403, and the Facility's NPP permit;

2.      Under 33 U.S.C. § 1319(b) and (d), assess civil penalties against Defendant of up

to $37,500 per day for each violation of the CWA occurring between December 6, 2013 and

November 2, 2015, and up to $55,800 per day for each violation occurring after November 2, 2015;

   3.  Under Neb. Rev. Stat. § 81-1508.02(2), assess civil penalties against Defendant of up to $10,000 per day for each day of violation;

   4.  Grant such other relief as the Court deems just and proper.

   Plaintiffs hereby request that trial of the above and foregoing action should be held in Omaha, Nebraska, and that the case be calendared accordingly.

         Respectfully submitted,

         JEFFREY B. CLARK
         Assistant Attorney General
         Environment & Natural Resources Division
         United States Department of Justice

         /s Eric D. Albert
         ERIC D. ALBERT
         Trial Attorney
         Environmental Enforcement Section
         Environment & Natural Resources Division
         United States Department of Justice
         P.O. Box 7611
         Washington, DC 20044-7611
         Telephone: (202) 514-2800
         eric.albert@usdoj.gov

         DOUGLAS J. PETERSON, #18146
         *Attorney General of Nebraska*

         *s/ Justin D. Lavene*
         JUSTIN D. LAVENE, #22178
         MAEGAN L. WOITA, #26287
         *Assistant Attorneys General*
         OFFICE OF THE ATTORNEY GENERAL
         2115 State Capitol
         Lincoln, Nebraska 68509
         Telephone: (402) 471-2064

Fax: (402) 471-1929
justin.lavene@nebraska.gov
maegan.woita@nebraska.gov

Attorneys for Plaintiff
State of Nebraska

OF COUNSEL:
SHANE MCCOIN
Office of Regional Counsel
United States Environmental Protection Agency, Region 7
11201 Renner Blvd.
Lenexa, Kansas 66219
Telephone: 913-551-7955
Email: mccoin.shane@epa.gov

JAMES VINCH
Attorney
Water Enforcement Division
Office of Water Enforcement, Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W. (2243A)
Washington, D.C. 20460
Telephone: 202-564-1256
Email: Vinch.James@epa.gov