UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF NEBRASKA, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 8:20-cv-00269 |
| | ) | |
| v. | ) | |
| | ) | |
| HENNINGSEN FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................. 4
II.     APPLICABILITY ...................................................................................................... 4
III.    DEFINITIONS ........................................................................................................... 5
IV.     CIVIL PENALTY ...................................................................................................... 8
V.      COMPLIANCE REQUIREMENTS ........................................................................ 10
VI.     REPORTING REQUIREMENTS ........................................................................... 16
VII.    STIPULATED PENALTIES ................................................................................... 18
VIII.   FORCE MAJEURE ................................................................................................. 24
IX.     DISPUTE RESOLUTION ....................................................................................... 26
X.      INFORMATION COLLECTION AND RETENTION ........................................... 29
XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................ 31
XII.    COSTS ..................................................................................................................... 33
XIII.   NOTICES ................................................................................................................. 33
XIV.    EFFECTIVE DATE ................................................................................................. 35
XV.     RETENTION OF JURISDICTION ......................................................................... 35
XVI.    MODIFICATION .................................................................................................... 36
XVII.   TERMINATION ...................................................................................................... 36
XVIII.  PUBLIC PARTICIPATION .................................................................................... 37
XIX.    SIGNATORIES/SERVICE ...................................................................................... 37
XX.     INTEGRATION ....................................................................................................... 38
XXI.    FINAL JUDGMENT ............................................................................................... 38
XXII.   26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION .................................... 39
XXIII.  APPENDIX .............................................................................................................. 39

Plaintiff the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and Plaintiff the State of Nebraska, on behalf of the Nebraska Department of Environment and Energy ("NDEE"), have filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant, Henningsen Foods, Inc., violated Section 307 of the Federal Water Pollution Control Act (commonly referred to as the "Clean Water Act" and hereinafter referred to as the "CWA"), 33 U.S.C. § 1317, and the Nebraska Environmental Protection Act, Neb. Rev. Stat. §§ 81-1501 to 81-1532.

Defendant owns and operates an egg-processing plant located at 325 Third Street, David City, Nebraska (the "Facility"). The violations alleged in the Complaint occur when Defendant's Facility discharges wastewater into the David City publicly owned treatment works ("POTW"). The Complaint alleges that Defendant violated Section 307 of the CWA, 33 U.S.C. § 1317, and the Nebraska Environmental Protection Act, Neb. Rev. Stat. §§ 81-1501 to 81-1532, by causing or contributing to David City's violations of its National Pollution Discharge Elimination System ("NPDES") permit, violating the National Pretreatment Standards at 40 C.F.R. Part 403, and violating the requirements of Defendant's Nebraska Pretreatment Program ("NPP") permit.

Defendant does not admit any liability to EPA, the United States, the State, or any other person arising out of or relating to the Facility or the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Sections I and XVIII, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over the Parties.  This Court has supplemental jurisdiction over the State law claims asserted by the State of Nebraska pursuant to 28 U.S.C. § 1367.  Venue lies in this District pursuant to 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree, any such action, and over Defendant, and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted under Sections 307 and 309 of the CWA, 33 U.S.C. §§ 1317 and 1319; the National Pretreatment Standards at 40 C.F.R. Part 403; and Sections 81-1508.02(1), 81-1508.02(2), and 81-1506(2)(c) of the Nebraska Environmental Protection Act, Neb. Rev. Stat. §§ 81-1508.02(1), 81-1508.02(2), and 81-1506(2)(c).

3.      The United States provided notice of the commencement of this action to the State under Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## II.      APPLICABILITY

4.      The obligations of this Consent Decree apply to and are binding upon the United States and the State, and upon Defendant and any successors, assigns, or other entities or persons

otherwise bound by law.

5.      No transfer of ownership (in part or in whole) or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to the transfer of operation or of a controlling interest in Defendant, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with the name and address of the transferee and, upon request, a copy of the proposed agreement, to EPA Region 7, the United States Attorney for the District of Nebraska, and the United States Department of Justice, in accordance with Section XIII (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.  For the avoidance of doubt, the term "transfer" as used in this Paragraph shall not include changes in personnel responsible for operating the Facility made in the ordinary course of business.

6.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

III.    DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the CWA or in regulations

promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Best Management Practices" or "BMPS" shall mean schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to implement the prohibitions listed in 40 C.F.R. § 403.5(a)(1) and (b), as defined by 40 C.F.R. § 403.3(e).  BMPs also include treatment requirements, operating procedures, and practices to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw materials storage.

b. "City Agreement" shall mean the Sewer Participation Service Agreement and Permit, dated July 23, 2018, as amended, attached as Appendix A.

c. "Complaint" shall mean the Complaint filed by the United States and the State in this action.

d. "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto.

e. "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any time period under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

f. "Defendant" shall mean Henningsen Foods, Inc.

g. "DOJ" shall mean the United States Department of Justice.

h. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

6

i. "Effective Date" shall have the definition provided in Section XIV (Effective Date).

j. "Facility" shall mean Defendant's egg-processing plant located at 325 Third Street, David City, Nebraska.

k. "Interference" shall mean a discharge which, alone or in conjunction with a discharge or discharges from other sources, both: (1) inhibits or disrupts the POTW, its treatment processes or operations, or its sludge processes, use or disposal; and (2) therefore is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation), as defined at 40 C.F.R. § 403.3(k).

l. "NDEE" shall mean the Nebraska Department of Environment and Energy, which is the agency authorized to administer the NPDES program in Nebraska under Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

m. "NPDES" shall mean the National Pollutant Discharge Elimination System authorized under Section 402 of the CWA, 33 U.S.C. § 1342.

n. "NPP" shall mean the State of Nebraska's Pretreatment Program, approved by EPA under Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

o. "Outfall 003" shall mean the outfall identified in NPP Permit Number NE0133108 issued December 26, 2019, attached as Appendix B.

p. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

q. "Parties" shall mean the United States, the State of Nebraska, and Defendant.

r.    "Pass Through" shall mean a discharge which exits the POTW into waters of the United States in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation), as defined at 40 C.F.R. § 403.3(p).

s.    "POTW" shall mean a publicly owned treatment works as defined at 40 C.F.R. § 403.3(q).

t.    "Section" shall mean a portion of this Decree identified by a roman numeral.

u.    "State" shall mean the State of Nebraska, acting on behalf of NDEE.

v.    "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.    CIVIL PENALTY

9.    Within 30 Days after the Effective Date, Defendant shall pay the sum of $827,500 as an aggregate civil penalty to the United States and the State, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

10.    Defendant shall pay a civil penalty of $413,750 to the United States by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Nebraska after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in

accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Frank Anonia
> VP of Egg Division
> 14334 Industrial Road
> Omaha, NE 68144-3398
> (402) 330-2500 x247
> franka@henningsenfoods.com

on behalf of Defendant. Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices).

At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIII (Notices); and (iii) to EPA in accordance with Section XIII (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Henningsen Foods, Inc.*, and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-1-1-11936.

11.    Defendant shall pay a civil penalty of $413,750 to the State by Electronic Funds Transfer ("EFT") to the Nebraska State Treasurer's Office account, in accordance with instructions provided to Defendant by the Nebraska Attorney General's Office after the Effective

Date.  The Nebraska Attorney General's Office will provide the payment instructions to:

> Frank Anonia
> VP of Egg Division
> 14334 Industrial Road
> Omaha, NE 68144-3398
> (402) 330-2500 x247
> franka@henningsenfoods.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the State in accordance with Section XIII (Notices).

12.     At the time of payment, Defendant shall send notice that payment has been made to the State via email or regular mail in accordance with Section XIII (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Henningsen Foods, Inc.*, and shall reference the civil action number.

13.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.     COMPLIANCE REQUIREMENTS

14.     Defendant shall comply with Sections 307(b) and 307(d) of the CWA, 33 U.S.C. § 1317(b), (d); the regulations promulgated thereunder at 40 C.F.R. Part 403; Sections 81-1508.02(1) and 81-1506(2)(c) of the Nebraska Environmental Protection Act, Neb. Rev. Stat. §§ 81-1508.02(1) and 81-1506(2)(c); and the regulations promulgated thereunder at Title 119 Neb. Admin. Code Chapter 26.

15.     Defendant shall comply with the terms, conditions, and requirements of any applicable NPP permit, including NPP Permit Number NE0133108, and any amendments or

modifications to NPP Permit Number NE0133108.

  16. <u>pH Adjustment Basin and Interim Effluent Limits</u>.

    a. Defendant shall operate and maintain the pH adjustment system for Outfall 003 in accordance with the specifications approved by Nebraska State Construction Permit No. 2018-0034 on March 28, 2018, attached as Appendix C.

    b. Until termination of this Consent Decree pursuant to Section XVII (Termination), Defendant is prohibited from discharging effluent to the David City POTW with a pH of less than 5.0 standard units or greater than 10.5 standard units based on continuous monitoring of the effluent, except that excursions from the range are permitted subject to the following limitations: (1) the total time during which the pH values are outside the required range of pH values shall not exceed 7 hours and 26 minutes in any calendar month; and (2) no individual excursion from the range of pH values shall exceed 60 minutes.  For purposes of this Paragraph, an excursion is an unintentional and temporary incident in which the pH value of discharge wastewater exceeds the range set forth in this Paragraph.

  17. <u>Anaerobic Lagoon</u>.

    a. Defendant shall make all payments to the David City POTW required by the City Agreement and any amendments thereto, in accordance with the terms thereof. Defendant shall provide written notice to EPA and the State of any proposed amendments to the City Agreement at least 30 Days before agreeing to any proposed amendments.  If David City and Defendant amend the City Agreement before termination of this Consent Decree under Section XVII (Termination), Defendant shall send EPA and the State a copy of the amended Agreement within 30 days of finalizing the amendment.

18.     <u>Operations and Maintenance Program</u>.

a.      <u>Plan Submittal.</u>  Not more than 60 days after the Effective Date , Defendant shall submit to EPA and the State for review and approval an Operations and Maintenance ("O&M") Program in accordance with 40 C.F.R. § 122.41(e) to ensure the proper operation and maintenance of the Facility and to implement Best Management Practices at the Facility.  The O&M Program shall include at a minimum: (1) periodic and routine maintenance, monitoring, testing and inspection schedules for equipment and apparatuses in areas where ingredients, products, process wastewater, or other materials can reach floor drains; (2) identification of critical equipment/systems; (3) standard operating procedures for operation of equipment and apparatuses in areas where ingredients, products, process wastewater, or other materials can reach floor drains and for routine inspections and maintenance; (4) record keeping documenting inspections and maintenance activities; and (5) a training curriculum.  Upon approval by EPA, Defendant shall implement the O&M Program.

b.      <u>Training</u>.  Following EPA's approval of the O&M Program, Defendant shall certify to EPA in the next semi-annual report due under Section VI (Reporting Requirements) that all personnel, whose job duties include production, wastewater management and treatment, environmental compliance, or health and safety, have been trained on the O&M Program.  All new employees or reclassified existing employees working in the designated job classifications shall be trained within 30 days of hire or reclassification.  All staff working in the designated job classifications shall be trained annually.  Defendant shall certify to EPA in the semi-annual reports submitted under Section VI (Reporting Requirements) that the annual training has occurred and/or will occur in the next 6-month period.

c.     Inspections.  Defendant shall complete scheduled inspections of each area identified under Paragraph 18.a above in accordance with the O&M Program.  Logs and findings of each inspection shall be maintained at the Facility in accordance with Section X (Information Collection and Retention) of this Consent Decree.  Defendant shall certify to EPA in the semi-annual reports in accordance with Section VI (Reporting Requirements) that all periodic inspections have been completed, log reports have been filled out and retained, and findings from those inspections were addressed through necessary maintenance, repair, or replacement.

19.     Interim Effluent Monitoring and Reporting Requirements.  Beginning on the Effective Date and until termination of this Consent Decree pursuant to Section XVII (Termination), Defendant shall monitor Outfall 003 for the parameters and at the frequency specified in the table below in addition to the monitoring requirements of its NPP permit.  Defendant shall provide machine-automated alerts of excursions outside the range set forth in Paragraph 16.b, by any means mutually agreeable in writing as between Defendant and the David City POTW.  Defendant shall provide such written agreement (which may be entered into by email) to EPA and the State not more than thirty (30) days after the Effective Date.

| Outfall | Parameter | Frequency | Sample Type |
|---------|-----------|-----------|-------------|
| 003 | BOD5 | Once Weekly | Flow-Proportional 24-Hour Composite |
| | TSS | Once Weekly | Flow-Proportional 24-Hour Composite |
| | TKN | Once Weekly | Flow-Proportional 24-Hour Composite |
| | pH | Daily | Continuous |
| | Oil and Grease | Twice Monthly | Grab |

13

20. <u>Supplemental Compliance Plan</u>.

a. If after EPA's approval of the O&M Program under Paragraph 18.a, Defendant violates the effluent limitations in Part I of its NPP permit, the pH limits in Paragraph 16.b, and/or the prohibitions against causing Pass Through and Interference at the David City POTW in Part II.A of its NPP permit, then Defendant shall, within 60 days of receiving notice from EPA, submit to EPA and the State for review and approval a Supplemental Compliance Plan to address the noncompliance. The Supplemental Compliance Plan shall describe in detail the additional actions to be taken or work to be completed, and how such actions or work will enable Defendant to achieve compliance with its NPP permit.

b. Any Supplemental Compliance Plan submitted under this Paragraph shall include a proposed sequential milestone schedule for completing the proposed actions/work. All such actions/work shall be completed as expeditiously as possible.

21. <u>Approval of Deliverables</u>. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA, after consultation with the State, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

22. If the submission is approved pursuant to Paragraph 21, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 21(b) or (c), Defendant shall, upon written direction from EPA, after consultation with the State, take all actions required by the approved plan, report, or other item that EPA, after consultation with the State, determines

14

are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX (Dispute Resolution).

23.     If the submission is disapproved in whole or in part pursuant to Paragraph 21(c) or (d), Defendant shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

24.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with the State, may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution and the right of EPA and the State to seek stipulated penalties as provided in the preceding Paragraphs.

25.     Any stipulated penalties applicable to the original submission, as provided in Section VII (Stipulated Penalties), shall accrue during the 45-day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

26.     <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section VIII (Force Majeure) for any delay in

the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.    REPORTING REQUIREMENTS

27.    Defendant shall submit the following reports:

a.    Semi-Annual Reports.  By March 31 and September 30 of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII (Termination), Defendant shall submit a semi-annual report as provided in this Paragraph.  Each semi-annual report shall contain the following information for the preceding six months (i.e., September to February shall be addressed in the report submitted by March 31, and March to August shall be addressed in the report submitted by September 30):

(1)    A progress report on the implementation of the requirements of Section V (Compliance Requirements) of this Consent Decree, including any Supplemental Compliance Plan and associated milestones required by Paragraph 20;

(2)    A description of operation and maintenance related to the implementation of the requirements of Section V (Compliance Requirements) of this Consent Decree;

(3)    A description of any problems encountered or anticipated in meeting this Consent Decree's requirements, together with implemented or proposed solutions;

(4)    A summary of all payments made to David City pursuant to the City Agreement;

(5)    A description of any proposed or finalized amendments to the City Agreement;

(6)    A summary of the status of permit applications, if any;

(7)    Copies of reports to state agencies;

16

(8)        Copies of all data collected pursuant to Paragraph 19;

(9)        The certification regarding training required by Paragraph 18.b;

(10)       The certification regarding inspections required by Paragraph 18.c; and

(11)       Any additional matters that Defendant believes should be brought to the attention of EPA and the State.

b.        The report shall also include a description of any noncompliance with the requirements of this Consent Decree and an explanation of the likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such noncompliance.  If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree or NPP Permit Number NE0133108, Defendant shall notify the United States and the State of such violation and its likely duration, by electronic transmission in writing, within 5 Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII (Force Majeure).

28.        Imminent Threat Reports.  Whenever any violation of this Consent Decree, of any applicable permits, or of any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the State by electronic transmission in

writing as soon as possible, but no later than 24 hours after Defendant first knew of the violation

or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

29.     All reports shall be submitted to the persons designated in Section XIII (Notices).

30.     Each report submitted by Defendant under this Section shall be signed by an

official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared
> under my direction or supervision in accordance with a system designed to assure
> that qualified personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the system, or those
> persons directly responsible for gathering the information, the information
> submitted is, to the best of my knowledge and belief, true, accurate, and complete.
> I have no personal knowledge that the information submitted is other than true,
> accurate, and complete.  I am aware that there are significant penalties for
> submitting false information, including the possibility of fine and imprisonment for
> knowing violations.

This certification requirement does not apply to emergency or similar notifications where

compliance would be impractical.

31.     The reporting requirements of this Consent Decree do not relieve Defendant of

any reporting obligations required by the CWA or implementing regulations, or by any other

federal, state, or local law, regulation, permit, or other requirement.

32.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

### VII.   STIPULATED PENALTIES

33.     Defendant shall be liable for stipulated penalties to the United States and to the

State, in accordance with Paragraph 41, for violations of this Consent Decree as specified below,

unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any

obligation required by the terms of this Decree, including any work plan or schedule approved

under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.  For the avoidance of doubt, if Defendant invokes Dispute Resolution with respect to a violation of this Consent Decree that has not been excused by Section VIII (Force Majeure), it shall be liable for stipulated penalties only to the extent and in the manner provided in Paragraph 43.

34.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

35.     Permit Effluent Limits.

a.     The following stipulated penalties shall accrue per violation for each violation of each effluent limit in NPP Permit Number NE0133108 after the Effective Date of this Consent Decree:

| Penalty Per Violation | Degree of Exceedance |
| --- | --- |
| $1,500 | less than 10% |
| $3,000 | 10-20% |
| $6,000 | 20-50% |
| $10,000 | above 50% |

b.     For purposes of this Paragraph, the degree of exceedance for violations of the effluent limits shall be calculated for each pollutant as (Measured Effluent – Discharge Limit)/Discharge Limit.  For example, the current NPP Permit establishes a Monthly Average Discharge Limit for TSS of 700 lbs/day.  For purposes of this Paragraph, the degree of exceedance for violations of the TSS effluent limit would be calculated as (Monthly Average Measured TSS in Effluent – 700)/700.

36. <u>Consent Decree Effluent pH Limits.</u>

a.     The following stipulated penalties shall accrue for each fifteen minutes, or portion thereof, of the total duration (including the initial hour) of each excursion from the range of pH values set forth in Paragraph 16.b that exceeds one hour in duration:

| Penalty Per Ten Minutes | Degree of Excursion |
|---|---|
| $1,000 | less than 1 standard unit |
| $2,000 | 1 to 2 standard units |
| $4,000 | 2 to 3 standard units |
| $8,000 | greater than 3 standard units |

b.     For purposes of Paragraph 36.a, the degree of excursion for violations of the pH limits in Paragraph 16.b shall be calculated as the absolute value of the maximum difference between the measured effluent pH during the excursion and the applicable limit (minimum or maximum).  For example, Paragraph 16.b establishes a minimum pH of 5.0 standard units.  If the lowest pH measurement taken during an excursion below this limit exceeding one hour in duration is 2 standard units, then for purposes of this Paragraph, the degree of excursion would be calculated as the absolute value of (2-5), which equals 3.

c.     The following stipulated penalties shall accrue for each month in which measured pH values are outside the required range of pH values set forth in Paragraph 16.b for an aggregate amount of time that exceeds 7 hours and 26 minutes: $4,000 for each fifteen minutes, or portion thereof, that the aggregate amount of such time exceeds 7 hours and 26 minutes.

37. <u>Pass Through and Interference</u>.  The following stipulated penalties shall accrue for Pass Through or Interference at the David City POTW caused by discharges from the Facility to the POTW, either alone or in conjunction with discharges from other sources, after the

Effective Date of this Consent Decree:

| Penalty Per Violation | Category of Noncompliance |
|---|---|
| $10,000 | Pass Through or Interference |

38.     Compliance Milestones.

a.      The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in subparagraphs 38.b and 38.c:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $1500 | 15th through 30th day |
| $2,500 | 31st day and beyond |

b.      Stipulated penalties shall accrue under this Paragraph for the failure to complete the following Compliance Milestones by the deadlines specified in Section V (Compliance Requirements):

(1)      Operate and maintain the pH adjustment system as required by Paragraph 16;

(2)      Make payments or provide a copy of any Permit amendments as required by Paragraph 17;

(3)      Submit the O&M Program required by Paragraph18.a;

(4)      Comply with the O&M Program, Training, and Inspection requirements of Paragraph 18;

(5)      Comply with the Interim Effluent Monitoring and Reporting Requirements required by Paragraph 19; and

(6)      Submit any Supplemental Compliance Plan if required by Paragraph 20.

c.      Stipulated penalties shall also accrue under this Paragraph for the failure to complete any milestones identified in any Supplemental Compliance Plan submitted under Paragraph 20 by the deadlines specified in the Supplemental Compliance Plan.

39.      <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI (Reporting Requirements):

<u>Penalty Per Violation Per day</u>                    <u>Period of Noncompliance</u>

$500....................................................1st through 14th day
$1,000...............................................15th through 30th day
$1,500...............................................31st day and beyond

40.      Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

41.      Defendant shall pay stipulated penalties to the United States and the State within 30 Days of receiving a written demand by either Plaintiff.  Defendant shall pay 50% of the total stipulated penalty amount due to the United States and 50% to the State.  The Plaintiff making the demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

42.      Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

43.      Stipulated penalties shall continue to accrue as provided in Paragraph 40, during

22

any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA or the State that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States or the State within 30 Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

b.      If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

44.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.  Defendant shall pay stipulated penalties owing to the State in the manner set forth and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

45.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided

23

by law for Defendant's failure to pay any stipulated penalties.

46.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

47.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree. Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), Defendant expressly reserves all defenses that may be available to it in resisting or defending such an action to enforce the Consent Decree or applicable law.

### VIII.   FORCE MAJEURE

48.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include

Defendant's financial inability to perform any obligation under this Consent Decree.

49.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic transmission to EPA and the State, within 72 hours of when Defendant first knew that the event might cause a delay.  Within 7 Days thereafter, Defendant shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the time period of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

50.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations.  An extension of the time for

performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

51.    If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

52.    If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 48 and 49. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.    DISPUTE RESOLUTION

53.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree. Defendant's payment of a portion of a stipulated penalty does not preclude its ability to seek resolution of a dispute under this Section with respect to the remaining portions of such

26

stipulated penalty.

54.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

55.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

56.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.  An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to Paragraphs 55 and 56.  Where appropriate, EPA may

allow submission of supplemental statements of position by the parties to the dispute.

57.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

58.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

59.     <u>Standard of Review</u>.

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 55 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law; provided, however, that Defendant reserves the right to argue that record review under applicable

principles of administrative law does not apply to the dispute.  If the Court declines to apply

record review under applicable principles of administrative law, then Paragraph 59.b shall apply.

> b.   <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in

any other dispute brought under Paragraph 55, Defendant shall bear the burden of demonstrating

by a preponderance of the evidence that it complied with the terms and conditions of this

Consent Decree, its permits, or the CWA (if the dispute arises from an allegation of

noncompliance) or that its proposal will achieve compliance with the terms and conditions of this

Consent Decree, its permits, and the CWA in an expeditious manner.

60.   The invocation of dispute resolution procedures under this Section shall not, by

itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent

Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

payment shall be stayed pending resolution of the dispute as provided in Paragraph 43.  If

Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid

as provided in Section VII (Stipulated Penalties).

## X.   INFORMATION COLLECTION AND RETENTION

61.   The United States, the State, and their representatives, including attorneys,

contractors, and consultants, shall have the right of entry into any facility covered by this

Consent Decree, at all reasonable times, upon presentation of credentials, to:

> a.   monitor the progress of activities required under this Consent Decree;

> b.   verify any data or information submitted to the United States or the State

in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendant's compliance with this Consent Decree.

62.     Upon request, Defendant shall provide EPA and the State or their authorized representatives splits of any samples taken by Defendant.  Upon request, EPA and the State shall provide Defendant splits of any samples taken by EPA or the State.

63.     Until 5 years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

64.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendant shall deliver any such documents, records, or other information to EPA or the State.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client

30

privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of Section V (Compliance Requirements), Section VI (Reporting Requirements), or Section VII (Force Majeure) of this Consent Decree shall be withheld on grounds of privilege.

65.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

66.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

67.    This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the date of lodging.

68.    The State covenants not to bring a civil action or take civil administrative action against Defendant in connection with the Notices of Violation issued by NDEE to Defendant on

the following dates: December 2, 2014, May 8, 2015, June 14, 2016.

69.     The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly stated in Paragraphs 67 and 68.  The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

70.      In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 67 and 68.

71.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

32

The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, 33 U.S.C. § 1251 et seq., or with any other provisions of federal, state, or local laws, regulations, or permits.

72.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

73.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.  Except as otherwise permitted by law or the Federal Rules of Evidence, none of the provisions of this Consent Decree, nor the fact of its entry, shall be admissible in evidence by any person in any proceeding other than in a proceeding to enforce this Consent Decree or any judgment related to it.

## XII.   COSTS

74.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.   NOTICES

75.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

As to the United States by email:     eescdcopy.enrd@usdoj.gov
                                      Re: DJ # 90-5-1-1-11936

As to the United States by mail:      EES Case Management Unit
                                      Environment and Natural Resources Division
                                      U.S. Department of Justice
                                      P.O. Box 7611
                                      Washington, D.C.  20044-7611
                                      Re: DJ # 90-5-1-1-11936

As to EPA:                            Paul Marshall or his successor
                                      Enforcement and Compliance Assurance Division
                                      U.S. Environmental Protection Agency, Region 7
                                      11201 Renner Boulevard
                                      Lenexa, Kansas 66219
                                      marshall.paul@epa.gov

                                      Shane E. C. McCoin or her successor
                                      Office of Regional Counsel
                                      U.S. Environmental Protection Agency, Region 7
                                      11201 Renner Boulevard
                                      Lenexa, Kansas 66219
                                      mccoin.shane@epa.gov

As to the State:                      Justin D. Lavene
                                      Assistant Attorney General of Nebraska
                                      2115 State Capitol Building
                                      Lincoln, Nebraska 68509
                                      justin.lavene@nebraska.gov

                                      Reuel S. Anderson
                                      Section Supervisor
                                      NPDES Permits and Compliance Section
                                      Nebraska Department of Environment and Energy

1200 N St. #400
Lincoln, Nebraska 68509
reuel.anderson@nebraska.gov

As to Defendant:          Frank Anonia
VP of Egg Division
14334 Industrial Road
Omaha, NE 68144-3398
(402) 330-2500 x247
franka@henningsenfoods.com

Michael S. Mostek
Mostek Law LLC
1111 N. 13th Street, Suite 305
Omaha, NE 68102
mike.mostek@mosteklaw.com

76.     Any Party may, by written notice to the other Parties, change its designated notice
recipient or notice address provided above.

77.     Notices submitted pursuant to this Section shall be deemed submitted upon
mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties
in writing.

## XIV.   EFFECTIVE DATE

78.     The Effective Date of this Consent Decree shall be the date upon which this
Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,
whichever occurs first, as recorded on the Court's docket.

## XV.   RETENTION OF JURISDICTION

79.     The Court shall retain jurisdiction over this case until termination of this Consent
Decree, for the purpose of resolving disputes arising under this Decree or entering orders
modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or

35

effectuating or enforcing compliance with the terms of this Decree.

## XVI.   MODIFICATION

80.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.  An extension of a deadline in this Consent Decree or any work plan required by this Consent Decree of six months or less shall not be considered a material change to this Consent Decree.

81.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 59, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

82.     After Defendant has completed the following requirements, Defendant may serve upon the United States and the State a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation:

a.      The requirements of Section V (Compliance Requirements), except for Paragraph 17;

b.       Defendant has maintained continuous satisfactory compliance with this Consent Decree and Defendant's NPP permit for a period of 15 months after EPA's approval of the O&M Program under Paragraph 18.a;

c.      Defendant has complied with all other requirements of this Consent Decree; and

      d.     Defendant has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree.

83.     Following receipt by the United States and the State of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States after consultation with the State agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

84.     If the United States, after consultation with the State, does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX (Dispute Resolution).  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 days after service of its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

85.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES/SERVICE

86.     Each undersigned representative of Defendant, the Attorney General of Nebraska,

and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

87.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.   INTEGRATION

88.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXI.   FINAL JUDGMENT

89.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendant.  The Court finds that there is no just reason for delay and therefore enters this

judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58.

## XXII.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

90.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the

Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability),

Paragraph 6,  Section V (Compliance Requirements), Paragraphs 14-22 and related Appendix A,

Section VI (Reporting Requirements), Paragraphs 27 and 29-30, and Section X (Information

Collection and Retention), Paragraphs 61-64, is restitution or required to come into compliance

with law.

## XXIII. APPENDICES

91.     The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the City Agreement;

"Appendix B" is NPP Permit NE0133108 ;

"Appendix C" is State Construction Permit No. 2018-0034.


Dated and entered this __19th__ day of _August_____, 2020

_____

UNITED STATES DISTRICT JUDGE
DISTRICT OF NEBRASKA

FOR THE UNITED STATES OF AMERICA:


_6/3/2020_                          _Nathaniel Douglas_
Date                                NATHANIEL DOUGLAS
                                    Deputy Section Chief
                                    Environmental Enforcement Section
                                    Environment and Natural Resources Division
                                    U.S. Department of Justice


                                    _Eric Albert_
                                    ERIC ALBERT
                                    Senior Attorney
                                    Environmental Enforcement Section
                                    Environment and Natural Resources Division
                                    U.S. Department of Justice
                                    Washington, DC  20044-7611

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

JAMES GULLIFORD
Digitally signed by JAMES GULLIFORD
Date: 2020.06.26 11:40:54 -05'00'

_____                    _____
JAMES B. GULLIFORD                                                      Date
Regional Administrator
U.S. Environmental Protection Agency, Region 7

LESLIE HUMPHREY
Digitally signed by LESLIE HUMPHREY
Date: 2020.06.25 14:25:19 -05'00'

_____
LESLIE HUMPHREY
Acting Regional Counsel
U.S. Environmental Protection Agency, Region 7

SHANE MCCOIN
Digitally signed by SHANE MCCOIN
Date: 2020.06.10 15:00:24 -05'00'

_____
SHANE E. C. MCCOIN
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 7

_____
ROSEMARIE KELLEY
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

_____
MARK POLLINS
Director, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:


_07/06/2020___          _____
Date                             LESLIE HUMPHREY
                                     Acting Regional Counsel
                                     U.S. Environmental Protection Agency, Region 7


                                     _____
                                     SHANE E. C. MCCOIN
                                     Assistant Regional Counsel
                                     U.S. Environmental Protection Agency, Region 7
                                     Office of Regional Counsel


                                     *Rosemarie Kelley*
                                     _____
                                     ROSEMARIE KELLEY
                                     Director, Office of Civil Enforcement
                                     Office of Enforcement and Compliance Assurance
                                     U.S. Environmental Protection Agency


                                     _____
                                     MARK POLLINS
                                     Director, Water Enforcement Division
                                     Office of Civil Enforcement
                                     Office of Enforcement and Compliance Assurance
                                     U.S. Environmental Protection Agency

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:


_____                    _____
Date                               LESLIE HUMPHREY
                                   Acting Regional Counsel
                                   U.S. Environmental Protection Agency, Region 7


                                   _____
                                   SHANE E. C. MCCOIN
                                   Assistant Regional Counsel
                                   U.S. Environmental Protection Agency, Region 7
                                   Office of Regional Counsel



                                   _____
                                   ROSEMARIE KELLEY
                                   Director, Office of Civil Enforcement
                                   Office of Enforcement and Compliance Assurance
                                   U.S. Environmental Protection Agency


6/16/2020                          _____
                                   MARK POLLINS
                                   Director, Water Enforcement Division
                                   Office of Civil Enforcement
                                   Office of Enforcement and Compliance Assurance
                                   U.S. Environmental Protection Agency

FOR THE STATE OF NEBRASKA:

6/1/2020
Date

JUSTIN D. LAVENE, #22178
*Assistant Attorneys General*
Office of the Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
Fax: (402) 471-1929
justin.lavene@nebraska.gov

42

FOR HENNINGSEN FOODS, INC., A NEW YORK
CORPORATION:

5/26/2020
Date

President & CFO —

Henningsen Foods,
Inc.

43